UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

MARK MCGRIFF and WILLIAM NIX, as
Trustees of, and on behalf of, the INDIANA
STATE COUNCIL OF CARPENTERS
PENSION FUND,

                Plaintiffs,

v.

SCHENKEL & SONS INC.

and

SCHENKEL CONSTRUCTION INC.

                Defendants.

Cause No. 14-cv-01742-TWP-DML

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

**INTRODUCTION**

The Indiana State Council of Carpenters Pension Fund (the "Fund") filed this action to compel interim withdrawal liability payments from Schenkel & Sons, Inc. ("Schenkel & Sons") and for a declaration that Schenkel Construction, Inc. ("SCI") is the alter ego of, or single employer with Schenkel & Sons. The statutory framework established by Congress through the Multiemployer Pension Plan Amendments Act ("MPPAA") requires that an employer make interim withdrawal liability payments according to the plan sponsor's schedule "notwithstanding any request for review or appeal of determinations of the amount" of the employer's withdrawal liability. 29 U.S.C. § 1399(c)(2). This framework, often referred to as a "pay now, dispute later" system, ensures that a pension fund receives payments from an employer for its share of unfunded vested benefits while the dispute concerning the existence or amount of withdrawal

liability proceeds through arbitration. Further, as binding on SCI, the question of whether SCI is an "employer" subject to withdrawal liability from the Fund must be decided by a Court, not an arbitrator.

Nevertheless, Schenkel & Sons and SCI, in a joint filing, ask the Court to stay this proceeding pending the completion of the arbitration between the Fund and Schenkel & Sons. The effect of a stay would be to deny the Fund the relief to which it is entitled under the MPPAA without complying with the narrow exception to interim withdrawal liability payments established under Seventh Circuit precedent. The Seventh Circuit recognizes a limited exception to interim withdrawal liability payments when an employer can establish both that (1) the plan sponsor's assessment of withdrawal liability was frivolous *and* (2) the employer would suffer irreparable injury. In moving to stay this proceeding and deny the Fund interim payments, Schenkel & Sons has attempted to prove neither element. Schenkel & Sons should not be permitted to deviate from the "pay now, dispute later" framework established by Congress and the Seventh Circuit precedent simply by alleging unsupported claims of hardship. This Court should also deny the motion to stay because SCI's status as Schenkel & Sons' alter ego is a threshold determination reserved for the Court as to SCI's obligations vis-à-vis the Fund.

## BACKGROUND

On May 7, 2014, the Fund notified Schenkel & Sons and SCI that the Fund determined that Schenkel & Sons experienced a complete withdrawal from the Fund and owed withdrawal liability in the amount of $1,859,363. (Br. Supp. Mot. Stay ("Br.") Ex. 1, Dkt. 34-1.) Schenkel & Sons' withdrawal liability was calculated based the portion of the Fund's unfunded vested benefits allocable to Schenkel & Sons' employees. Schenkel & Sons could make a lump sum

2

payment of its withdrawal liability or make the first of its 26 quarterly payments beginning June 1, 2014. (*Id.*)

The withdrawal liability assessment also identified the procedure set forth under MPPAA by which Schenkel & Sons could challenge the Fund's assessment. Schenkel & Sons had 90 days in which to request a review of the calculations identified in the letter or otherwise challenge the assessment. Schenkel & Sons would have an opportunity to initiate arbitration if the Fund rejected the challenge or otherwise failed to respond to the request for review.

Schenkel & Sons has failed to make any of its required quarterly payments pending review in arbitration. (*See* Compl.¶¶ 28, 31, Dkt. No. 1.) Under the payment schedule established by the Fund pursuant to MPPAA, Schenkel & Sons' first quarterly payment was due June 1, 2014. Schenkel & Sons failed to make its first quarterly payment. On August 4, 2014, Schenkel & Sons requested a review of its withdrawal liability assessment and claimed that it was not required to make quarterly payments based on a "narrow exception adopted by the courts." (Br. Ex. 2, Dkt. 34-2.) Schenkel & Sons claimed that it was exempt from interim payments because the Fund's claim was frivolous and Schenkel & Sons would be irreparably harmed by making the interim payments. (*Id.*)

After Schenkel & Sons failed to make its second quarterly payment, the Fund commenced an action to recover the outstanding interim payments[1] and for a determination that SCI is an alter ego, or single employer with, Schenkel & Sons and, therefore, jointly liable for

---

[1] In addition to seeking an order for payment of delinquent interim payments and ordering Schenkel & Sons to make interim payments on an ongoing basis, the Fund requested interest, liquidated damages, and reasonable attorneys' fees, pursuant to 29 U.S.C. § 1132(g)(2). (Compl. Dkt. No. 1 at 9-10.) Interest on missed payments, liquidated damages, and reasonable attorneys' fees and costs are "mandatory add-ons" in a successful suit to enforce interim withdrawal liability payments. *Cent. States, Se. & Sw. Areas Pension Fund v. Murphy Bros., Inc.*, 772 F. Supp. 2d 918, 922 (N.D. Ill. 2011). In response to a question from the Court during the January 28, 2015 Initial Pretrial Conference, counsel for the Fund indicated that the Fund was seeking damages available by statute for delinquent interim payments, not lost returns on investment during the delinquency, which is different than Defendants' characterization that the Fund is not seeking the "lost value of interim payments." *(See* Br. at 5.)

the interim payments and outstanding withdrawal liability. (*See* Compl., Dkt. 1.) Schenkel & Sons and SCI sought and obtained two extensions of time in which to file an answer to the Fund's complaint, which extended their answer deadline from November 21, 2014 to January 9, 2015. (*See* Dkt. Nos. 15, 25-26, 28-29). During the pendency of the answer, Schenkel & Sons failed to make its third quarterly payment.

On November 19, 2014, the Fund gave notice to Schenkel & Sons that it denied the request for review. (Br. Ex. 3, Dkt. 34-3.) The Fund identified a significant level of overlap and interrelation between Schenkel & Sons and SCI, which supported the Fund's conclusion that Schenkel & Sons and SCI should be treated as a single employer under both the single employer doctrine and the alter ego doctrine for purpose of determining, assessing and collecting withdrawal liability under ERISA. (*Id.*) Given the single employer status, Schenkel & Sons, through SCI, continued to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, which triggered a complete withdrawal from the Fund under ERISA. As such, Schenkel & Sons was properly assessed withdrawal liability in the amount of $1,859,363.

After the denial of the request for review, Schenkel & Sons filed its demand for arbitration on December 18, 2014. (Br. Ex. 4, Dkt. 34-4.) In its demand for arbitration, Schenkel & Sons claimed that it fell within the building and construction industry exception to withdrawal liability because it was no longer operating. (*Id.*) In addition, Schenkel & Sons claimed that it was not obligated to make interim payments pending a final decision by the arbitrator – the issue raised by the Fund in its action seeking interim payments. Schenkel & Sons and SCI moved to stay the Fund's collection while the arbitration proceeds to a hearing, which is currently scheduled for August 10 and 11, 2015.

# ARGUMENT

## I. SCHENKEL & SONS CANNOT AVOID INTERIM PAYMENT OBLIGATIONS WITHOUT SHOWING THAT THE FUND'S CLAIM IS FRIVOLOUS AND IT WOULD BE IRREPARABLY HARMED

### A. MPPAA Requires Withdrawing Employers To Make Interim Payments Even If There Is A Challenge To The Withdrawal Liability Assessment.

The MPPAA establishes a framework for the assessment, collection and challenge of an employer's withdrawal liability. An employer that withdraws from a multiemployer plan must make payment of "withdrawal liability," which is the employer's proportionate share of the plan's unfunded vested benefits. 29 U.S.C. § 1381(a). Once a plan determines that an employer has withdrawn from the plan and there are unfunded vested benefits, it must notify the employer of the amount of the liability, prepare a payment schedule, and demand payment in accordance with the schedule. 29 U.S.C. §§ 1382, 1399(b)(1).

Disputes between a withdrawing *employer* and the plan sponsor of a multiemployer plan concerning a determination made under sections 29 U.S.C. §§ 1381-1399 must be resolved through arbitration. 29 U.S.C. § 1401(a)(1) (emphasis added). One such dispute reserved for arbitration is the plan's determination that a building and construction industry employer experienced a complete withdrawal. *See* 29 U.S.C. §§ 1383(b), 1401(a). A building and construction industry employer, unlike other employers, experiences a withdrawal if it ceases to have an obligation to contribute under the plan and continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required. *See* 29 U.S.C. § 1383(b)(2). An employer claiming a complete withdrawal never occurred because it ceased performing work in the jurisdiction of the collective bargaining agreement must raise the defense to the arbitrator. *See Trs. of Laborers Dist. Council & Contractors Pension Fund of Ohio v. Excel Contracting, Inc.*, 2:12-CV-462, 2012 WL 4322572,

at *4 (S.D. Ohio Sept. 20, 2012) (citing *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. Palladium Equity Partners, LLC,* 722 F. Supp. 2d 854, 874–75 (E.D. Mich. 2010); *Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Parsippany Constr. Co.,* No. 08–2763, 2009 WL 1076201, at *3 (D.N.J. Apr. 21, 2009); *Trs. of Utah Carpenters' & Cement Masons' Pension Trust v. New Star/Culp L.C.,* No. 07-cv-699, 2009 WL 321573, at *4-5 (D. Utah Feb. 9, 2009)).

The MPPAA provides that the withdrawal liability payment schedule established by the plan sponsor in accordance with section 1399 governs payment notwithstanding an employer's challenge of the withdrawal liability assessment. The MPPAA specifically provides:

> Withdrawal liability **shall be payable** in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand **notwithstanding any request for review** or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2) (emphasis added). An employer's payments are due in accordance with the payment schedule "until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decisions of the arbitrator with respect to the determination." 29 U.S.C. § 1401(d).

Congress created a "pay now, dispute later" system to protect pension funds from the risks of employer insolvency during the pendency of arbitration and any proceedings to review or enforce the award. *Trs. of the Chi. Truck Drivers, Helpers & Warehouse, Workers Union (Indep.) Pension Fund v. Cent. Transp., Inc.*, 935 F.2d 114, 118-19 (7th Cir. 1991). Through the MPPAA, Congress sought to "'ensure that [withdrawing] employer[s] would not leave a plan with vested pension obligations that were only partially funded.' Thus, employers who withdraw from the pension plans must still pay their proportionate share of the 'unfunded vested benefits.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat., Inc.*, 253 F.3d 1011, 1014 (7th Cir.

6

2001) (internal citations omitted). Withdrawal liability payments prevents a withdrawing employer from shifting the financial burden of employees' vested pension benefits to the remaining "employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Id.* (internal citations omitted). Even though there is the possibility that an arbitrator may find an employer does not owe withdrawal liability, Congress decided it was preferable for the pension fund to collect interim payments pending arbitration and later refund overpayments, if necessary. As explained by the Seventh Circuit:

> [a]lthough the [fund] bears substantial risk if the employer holds the stakes pending final resolution, the employer faces no corresponding risk if the fund holds the stakes. Pension funds are solvent, diversified, regulated institutions…. [F]unds will be able to repay any withdrawal liability that a court or arbitrator ultimately determines they should not have collected.

*Cent. Transp. Inc.,* 935 F.2d at 118-19 (internal citations omitted).

### B. The Seventh Circuit Has Interpreted MPPAA To Require Withdrawing Employers To Make Interim Payments Subject To A Single Narrow Exception Schenkel & Sons Has Not Shown Applies.

The plain language of the MPPAA leaves no doubt that an employer is required to make interim payments according to the payment schedule established by the plan sponsor until a final resolution by the arbitrator, even if the employer has initiated the review process. 29 U.S.C. §§ 1382, 1399(b)(1). The Seventh Circuit recognizes a narrow exception to the interim payment requirement only in circumstances where the plan's claim is frivolous and making interim payments would cause irreparable harm to the withdrawing employer. *Cent. States, Se. & Sw. Areas Pension Fund v. Murphy Bros., Inc.*, 772 F. Supp. 2d 918, 921 (N.D. Ill. 2011)(citing *Bomar Nat'l Inc.*, 253 F.3d at 1016). A frivolous claim is one on which the "arbitrator is almost certain to rule for the employer." *Cent. Transp., Inc.*, 935 F.2d at 119.

Since the MPPAA calls for arbitration of specific disputes between an employer and plan sponsor, a district court has a limited role in assessing the merits of the Fund's claim in an action

to compel interim payments under the Seventh Circuit's narrow exception to interim payments. *See Murphy Bros., Inc.*, 772 F. Supp. 2d at 921; 29 U.S.C. § 1401(a)(1).  Once the court "assure[s] itself that the plan's claim is legitimate…the court should order the making of interim payments and leave the rest to the arbitrator." *Id.*  An employer may not avoid interim payment obligations based on a claim of hardship or irreparable harm alone.  *See Cent. States Se. & Sw. Areas Pension Fund v. Waterland Trucking Serv. Inc.*, 375 F. Supp. 2d 684 (N.D. Ill. 2005) (refusing to address employer's claim of irreparable injury when employer failed to demonstrate the pension fund's claim was frivolous).  An employer on the brink of bankruptcy may not avoid interim payments on that basis under Seventh Circuit precedent.  *See Cent. States, Se. & Sw. Areas Pension Fund v. Manning Motor Express, Inc.*, 125 F. Supp. 2d 1115, 1117 (N.D. Ill. 2000) (finding "[i]nterim payments may well force [employer] into bankruptcy.  But we must enforce Congress' judgment that it is better, for all employees, to require payment up front")).  Although the Seventh Circuit has a test that permits an employer to avoid its interim payment obligations, the Fund is not aware of any instance in which a court has found an employer has satisfied the Seventh Circuit's two-part test to avoid interim payments.  *Id.* at 1116 (noting "fact that no employer has satisfied the test yet does not mean the test is invalid").

In its motion to stay, Schenkel & Sons implicitly concedes that it does not fall within this narrow exception because it fails to reference the standard in its brief in support of its motion to stay this action.  (*Compare* Br., Dkt. 34 with Br. Ex. 4, Dkt. 34-4.)  As set forth in the Complaint, the Fund plausibly alleged an interrelatedness of the operations and ownership between Schenkel & Sons and SCI.  (*See* Compl. ¶¶17-23, Dkt. No. 1.)  At minimum, the Fund has a colorable claim that SCI is the alter ego of or a single employer with Schenkel & Sons based on the following allegations:

- The owners of the entities are related to each other; (*Id.* at ¶ 17)
- The entities share the same principal place of business; (*Id.* at ¶ 18)
- Schenkel & Sons sold its assets to SCI in a non-arm's length transaction; (*Id.* at ¶ 21)
- SCI served as Schenkel & Sons' exclusive agent to provide office staff and equipment for its construction business after the sale without terms governing payment for services; (*Id.* at ¶ 22)
- The entities have worked for the same clients and on the same projects; (*Id.* at ¶ 23)
- The entities have a common owner and have shared employees. (*Id.* at ¶¶ 16, 20.)

Tellingly, neither defendant moved to dismiss the complaint arguing that the claims raised were frivolous.

Under established Seventh Circuit precedent, Schenkel & Sons is required to make interim payments if the Fund has a colorable claim, as it does here. It is not sufficient to allege financial hardship. *See Waterland Trucking Serv. Inc.*, 375 F. Supp. 2d at 684; *Manning Motor Exp., Inc.*, 125 F. Supp. 2d at 1116 (explaining "[b]ecause the claim is not frivolous, whether interim payments will cause [the employer] irreparable harm is immaterial"). Further, Schenkel & Sons offers the Court nothing more than its own unsubstantiated claims of financial hardship, and have offered no evidence that it, or its owners, would be unable to make the interim payments.[2] In *Hancock v. Cook County Waste & Recycling, Inc.*, the Court rejected a defendant's claim that it would suffer financial hardship if compelled to make interim payments where the defendants claimed an inability to pay based on its most recent financial statements and tax returns. No. 09-CV-212, 2010 WL 1416978, at *10 (N.D. Ill. Apr. 5, 2010); *see also Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v.*

---

[2] As for the ability of the former owners to pay, according to documents the Fund received in response to a Withdrawal Liability Questionnaire, Cletus P. Schenkel, Jr., Mark Schenkel, and Christopher Schenkel each received promissory notes in the amount of $166,666.66 from SCI in connection with SCI's purchase of Schenkel & Sons' property. If the former owners of Schenkel & Sons received payments according to the terms of the notes, payments to date would be sufficient to cover the first three quarterly payments that Schenkel & Sons has failed to pay. (*See* Ex. A.) There would be further evidence that SCI purchased Schenkel & Sons' assets in a non-arm's length transaction if SCI has not been paying the obligations under the promissory notes.

*Rentar Indus., Inc.*, 951 F.2d 152, 155 (7th Cir. 1991)(explaining employer was not entitled to a hearing on irreparable harm based on interim payments obligations when employer offered no evidence whatsoever to support its assertion of irreparable harm). Schenkel & Sons has offered nothing to substantiate its alleged inability to pay other than the unsworn statement that the company is no longer in business.

Unable to satisfy the narrow exception adopted by the Seventh Circuit to avoid its interim withdrawal liability payment obligations, Schenkel & Sons attempts to obtain relief that would otherwise be unavailable by way of a motion to stay. But the Seventh Circuit precludes this approach as well. As explained by the Seventh Circuit, "nothing in the MPPAA gives the district judge a chancellor's foot veto over collection." *Cent. Transp., Inc.*, 935 F.2d at 118. When Congress enacted MPPAA it created a system that "calls on the employer to pay 'notwithstanding' contentions that may prevail in the end. The MPPAA puts payment ahead of decision…" *Id.* Despite recognizing that employers may dislike the framework established by the MPPAA, the Seventh Circuit noted that "the employers lost that fight a decade ago in Congress." *Id.*

Schenkel & Sons cites no Seventh Circuit authority, and the Fund is aware of none, that permits a district court to stay an action to enforce withdrawal liability interim payments until the resolution of a pending arbitration. (*See* Br. at 9-10, Dkt. 34.) In support of its position that the Court can disregard the MPPAA and case law interpreting its requirements, Schenkel & Sons cites to five factors allegedly governing this Court's decision on the motion to stay, but with one exception, these cases have nothing to do with interim payments of withdrawal liability. (*See id.* at 10.) The one case relating to enforcement of interim payment obligation on which Schenkel & Sons relies, *Robbins v. Pepsi-Cola Metropolitan Bottling Co.,* weighs against the very relief

Schenkel & Sons seeks. *See* 637 F. Supp. 1014 (N.D. Ill. 1986). In *Robbins*, the district court ordered an employer to make interim withdrawal liability payments and rejected the employer's application for a supersedeas bond to stay the obligation to pay pending appeal. *Id.* at 1016. The court reviewed the plain language of the MPPAA and congressional intent and found that the supersedeas procedure in Fed. R. Civ. P. 62(d) did not apply in the interim payment context because it "would run counter to Congress' express goal of ensuring that litigation would not disrupt the continuous flow of contributions to the Fund." *Id.* at 1018. The court explained:

> [W]hen Congress ordered these installment payments, it intended them to continue until the issuance of a final decision regarding the employer's total obligation to the Fund, whether by arbitrator or court. *See also* 29 U.S.C. § 1401(d). Given the clear mandate of Congress set forth in § 1399(c)(2), [the employer's] assertion that it has a "right" to a supersedeas bond pursuant to Rule 62(d) is rejected as being contrary to that section. The MPPAA's unique statutory scheme was designed to rectify and protect against the serious economic repercussions caused by employers withdrawing from multiemployer pension plans, and the interim payments requirement is an integral part of this statutory scheme.

*Id.* On appeal, the Seventh Circuit agreed with the "district court's thorough and careful evaluation" of the competing provisions between Rule 62(d) stays pending appeal and interim payments. *Robbins v. Pepsi-Cola Metro. Bottling Co.*, 800 F.2d 641, 643 (7th Cir. 1986). The Seventh Circuit found the "scheme of interim liability is plainly and wholly inconsistent with the availability of an automatic stay simply upon posting of a bond" because it would allow an employer to avoid interim payments as the decision progressed through the appeal process. *Id.* The Seventh Circuit was unwilling to stay an employer's obligation to make interim payments even when the employer offered to post a bond covering its obligations, yet Schenkel & Sons requests similar relief without offering *any* bond or security to the Fund to cover its proportionate share of the Fund's unfunded vested benefits.

By arguing that the Court should consider five factors in determining whether to grant its motion to stay, defendants disregard the great weight of authority interpreting an employer's obligation to make interim payments pending arbitration and the limited circumstances under which an employer can avoid this obligation. Even if the Court were permitted to consider hardship to the withdrawing employer (in the absence of a frivolous claim for interim payments) and the public interest as factors in deciding a motion to stay, Congress through the MPPAA made those policy choices. *See, e.g. Robbins*, 637 F. Supp. at 1018; *Cent. Transp. Inc.*, 935 F.2d at 118 (explaining reasons why "Congress gave pension funds the right to hold the stakes while arbitrators resolve the disputes"). Congress decided that a policy favoring interim payments served a number of goals, among them reducing the risk that an employer will not pay and encouraging speedy adjudication. *Bomar Nat., Inc.*, 253 F.3d at 1015.

In arguing that the potential harm to the former owners of Schenkel & Sons supports a motion to stay, Schenkel & Sons relies on a Seventh Circuit case that formed the basis for the Seventh Circuit's narrow exception to the interim payment requirement. (Br. at 10, Dkt. No. 34 (quoting *Robbins v. McNicholas Trans. Co.*, 819 F.2d 682, 686 n.4 (7th Cir. 1987)).)[3] But *McNicholas* is "not an invitation to pre-try the case or to excuse payments by those employers whose precarious financial condition creates the greatest risk to the pension plan." *Cent. Transp. Inc.*, 935 F.2d at 119. Schenkel & Sons cannot rely on *McNicholas* as a basis to avoid interim payments unless it can demonstrate the Fund's claim is frivolous, which it has not even attempted to do. *See id.* (explaining Court should order interim payment and leave defenses to the arbitrator after assuring itself the Fund's claims were legitimate); *Rentar Indus., Inc.*, 951

---

[3] The Brief in Support cites to language from footnote 4 of the opinion, but there is no footnote 4 in the opinion and the quoted language appears to be a reference to an excerpt from footnote 4 of the PBGC's brief which was quoted by the Seventh Circuit.

F.2d at 155 (holding that "irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim").

Finally, Schenkel & Sons attempts to make a statutory based argument that the Fund is not entitled to interim payments because this collection action was filed before arbitration could be commenced. (*See* Br. at 11, Dkt. No. 34 (citing 29 U.S.C. § 1401(b)(1).) An employer is obligated to begin making its interim payments no later than 60 days after the date of demand "notwithstanding any request for review." 29 U.S.C. § 1399(c)(2). An employer must continue to make payments "in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration…." 29 U.S.C. § 1401(d). Schenkel & Sons had an obligation to make interim payments before the company had the opportunity to commence arbitration and the "initiation of arbitration proceedings 'does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan.'" *Bomar Nat., Inc.*, 253 F.3d at 1015 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994)); *see also H.C. Elliott, Inc. v. Carpenters Pension Trust Fund for N. Calif.*, 663 F.Supp. 1016, 1026 (N.D. Cal. 1987) aff'd, 859 F.2d 808 (9th Cir. 1988) (explaining employer who had not yet initiated arbitration was required to remain current in its monthly withdrawal liability payments until final decision in arbitration).

Schenkel & Sons may not circumvent the narrow exception carved out by the Seventh Circuit's exception to interim payments by invoking the motion to stay standard. Schenkel & Sons must establish that the Fund's claim is frivolous *and* demonstrate an irreparable injury if it seeks to avoid the interim withdrawal liability payments mandated under the MPPAA.

## II. A FEDERAL COURT – NOT THE ARBITRATOR – HAS THE POWER TO DETERMINE WHETHER SCI IS AN EMPLOYER

As binding on SCI, the determination of whether SCI is a single employer with, or the alter ego of Schenkel & Sons is a threshold determination reserved for the Court, which means a stay of this proceeding to allow the arbitrator to decide the issue in the first instance is not appropriate. Under Seventh Circuit precedent, "the threshold question of whether a company is an 'employer' may be submitted to a court prior to arbitration." *Transpersonnel, Inc. v. Roadway Exp., Inc.*, 422 F.3d 456, 459, n.1 (7th Cir. 2005). Whether an entity ever became an employer for MPPAA purposes is a question for the courts because "its resolution decides the arbitrator's authority over a dispute." *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 875 F.2d 1285, 1291 (7th Cir. 1989)(internal citations omitted); *see also Mason & Dixon Tank Lines, Inc. v. Cent. States Pension Fund*, 852 F.2d 156, 167 (6th Cir. 1988)(explaining "[s]ince only an 'employer' is required to arbitrate, the district court may address this threshold question before arbitration").

The MPPAA reserves disputes between an *employer* and a plan sponsor concerning a determination made under sections 1381 through 1399 for arbitration. 29 U.S.C. § 1401(a)(1). Whether an entity is an "employer" for purposes of withdrawal liability, however, does not arise from a determination made under sections 1381 through 1399, which makes it an issue appropriate for judicial resolution. *See N.Y. State Teamsters Confer. Pension and Ret. Fund v. Express Servs.*, 426 F.3d 640, 645-46 (2d. Cir. 2005). The Second Circuit deemed it inappropriate to resolve an entity's alter ego status through the arbitration because alter ego liability arises from a "general federal policy" to protect employee benefits and not from a specific statutory provision that is subject to arbitration under MPPAA. *Id.* at 648.

The Court should resolve the alter ego issue in the first instance because the arbitrator lacks the authority to do so and to preserve judicial resources. While Schenkel & Sons and SCI raise the specter of inconsistent judgments as a reason to stay this proceeding and allow the arbitration to proceed, this possibility is created by the statutory framework of the MPPAA and the judicial interpretation of where disputes are to be litigated. SCI is not, and cannot be, a party to the arbitration proceedings. If this Court stays this action and the arbitrator finds that SCI is the alter ego of Schenkel & Sons, the Fund will not be able to certify the award and obtain payments from SCI because SCI will almost certainly object to a decision made by an arbitrator in a proceeding to which it was not a party and did not consent. The Court would then be required to determine whether SCI is Schenkel & Sons' alter ego, the very issue the Fund seeks to resolve in the present action. Thus, allowing the Fund to pursue its claims before the Court will satisfy the MPPAA's requirements and allow the arbitrator to resolve those issues reserved for arbitration.

The Fund wants to avoid all unnecessary expense and is open to a schedule that works well for both the arbitration proceeding and this action. The Fund would consent to a stay of the arbitration to allow the Court to make its threshold determination and to address Defendants' concern with proceeding in two forums. However, little by way of unnecessary additional cost and burden will be imposed upon by the parties by both actions proceeding concurrently because the issues in each, and the discovery needed, will be identical.

## CONCLUSION

Schenkel & Sons asks the Court to disrupt MPPAA's "pay now, dispute later" framework based on a generalized motion to stay standard without addressing or substantiating either of the two elements that is required before an employer may avoid interim payments. The Fund

15

respectfully requests that the Court deny Schenkel & Sons' and SCI's motion for a stay since Schenkel & Sons is not eligible to avoid its interim payment obligations under established Seventh Circuit precedent. The Fund also asks that this case proceed so that this Court may determine SCI's status as an alter ego – an issue the arbitrator is without authority to decide.

Dated this 4th day of March, 2015.

    s/ Alexander B. Handelsman
Sarah A. Huck
shuck@reinhartlaw.com
Alexander B. Handelsman
ahandelsman@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
*Admitted Pro Hac Vice*

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone: 414-298-1000
Facsimile: 414-298-8097


Paul T. Berkowitz
ptb@ptblaw.com
Paul T. Berkowitz & Associates, Ltd.
123 West Madison, Suite 600
Chicago, Illinois 60602
Telephone: (312) 419-0001
Facsimile: (312)419-0002

Attorneys for Plaintiffs, Trustees of the
INDIANA STATE COUNCIL OF
CARPENTERS PENSION FUND

**CERTIFICATE OF SERVICE**

I hereby certify that on March 4, 2015, I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of Indiana by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Alexander B. Handelsman

31500232v2