UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK McGRIFF and WILLIAM NIX, as Trustees of, and on behalf of, the INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 1:14-cv-01742-TWP-DML |
| vs. | ) ) | |
| SCHENKEL AND SONS INC and SCHENKEL CONSTRUCTION INC., | ) ) ) | |
| Defendants. | ) | |

## Order on Defendants' Motion to Stay

Defendants Schenkel and Sons Inc. ("Sons") and Schenkel Construction Inc. ("Construction") request that the court stay this litigation pending the outcome of an arbitration proceeding between the plaintiff Fund and defendant Sons. They urge that the court's inherent power to control its docket favors a stay based on judicial economy, the balance of hardships between the parties, and the public interest. As addressed below, the court finds that this litigation should not be stayed entirely because the Fund should be permitted to seek relief against defendant Sons based on its failure to make interim withdrawal payments. A stay will be imposed as to the liability claims against Construction.

## Background

According to defendant Sons, it ceased construction operations in 2012 and later sold its assets to relatives of its principals, who had formed defendant Construction. Sons made its final contribution to the Fund in December 2013. In early 2014, the Union notified Sons that it was terminating their collective bargaining agreement, thus triggering withdrawal liability to the Fund. On May 7, 2014, the Fund notified Sons that it had assessed Sons's withdrawal liability in the amount of $1,859,363, and demanded payment in a lump sum or in quarterly installments, with the first installment to be paid by June 1, 2014.

Under the Multiemployer Pension Plan Amendments Act ("MPPAA"), Sons had 90 days to request the Fund to review its calculation or otherwise to challenge the Fund's assessment or payment schedule. 29 U.S.C. § 1399(b)(2)(A). Sons sent a letter to the Fund on August 4, 2014, requesting a review by the Fund (the "Request for Review"). Its letter contended that no withdrawal liability was appropriate based on a "construction industry exception" under 29 U.S.C. § 1383(b), and advised the Fund that Sons had no assets and should not be required to make interim withdrawal liability payments because it would be irreparably harmed if required to do so.

The MPPAA requires arbitration of a dispute between a fund and employer about whether an employer has withdrawal liability and, if so, its amount. 29 U.S.C. § 1401(a)(1). Arbitration may be commenced by the fund or the employer but

arbitration may not be initiated by either party until the earlier of a fund's response to a request for review or 120 days after the request for review was made. *Id.*

On October 24, 2014, the Fund filed this lawsuit. The Fund's complaint seeks to recover interim withdrawal liability payments and seeks a determination that defendant Construction is jointly liable for Sons's obligations (as an alter ego or single employer), including interim withdrawal liability payments. On November 19, 2014, the Fund responded to Sons's Request for Review. It refused to modify its assessment. One month later, Sons initiated arbitration. An arbitrator has been selected, who has set deadlines for discovery and expert reports and scheduled a hearing for August 10-11, 2015. Only Sons and the Fund are parties to the arbitration; Construction is not a party.[1]

## Analysis

I. **Sons cannot avoid Congress's "pay now, dispute later" system via a motion to stay.**

The MPPAA requires an employer to make interim withdrawal liability payments demanded by a fund notwithstanding the pendency of an employer's request for review or the arbitration of a withdrawal liability dispute:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor under subsection (b)(1) of this section beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.

29 U.S.C. § 1399(c)(2).

---

[1] According to the Fund, Construction could not be made a party to the arbitration because there is no judicial determination that it is an "employer."

3

As the Fund points out, this "pay now, dispute later" system is designed to protect pension funds from the risk of employer insolvency during the pendency of arbitration and any proceedings to review or enforce an arbitration award, while recognizing that the employer faces virtually no risk that the fund will be unable to repay any employer overpayments. *Trustees of Chicago Truck Drivers, Helpers & Warehouse Workers Union Pension Fund v. Central Transport, Inc.,* 935 F.2d 114, 118-19 (7th Cir. 1991). If an arbitrator ultimately rules in favor of the employer and the employer's interim payments exceed its liability, the fund repays any overpayments. As the Seventh Circuit explained:

> Although the [fund] bears substantial risk if the employer holds the stakes pending final resolution, the employer faces no corresponding risk if the fund holds the stakes. Pension trusts are solvent, diversified, regulated institutions . . . . [F]unds will be able to repay any withdrawal liability that a court or arbitrator ultimately determines they should not have collected.

*Id.* at 118-19.

The Seventh Circuit recognizes a narrow exception to the interim payment requirement, which applies when the Fund's claim is frivolous (meaning that the "arbitrator is almost certain to rule for the employer") and the making of interim payments would cause irreparable harm to the withdrawing employer. *Central Transport,* 935 F.2d at 119. *See also Central States, Southeast and Southwest Areas Pension Fund v. Murphy Bros., Inc.,* 772 F. Supp. 2d 918, 921 (N.D. Ill. 2011) (employer bears burden to show that plan's claim is frivolous and employer would suffer irreparable harm if forced to make interim payments); *Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Serv. Inc.,* 375

4

F. Supp. 2d 684, 687 (N.D. Ill. 2005) (refusing to address employer's claim of irreparable injury when employer did not show that the fund's claim was frivolous); *Central States, Southeast and Southwest Areas Pension Fund v. Manning Motor Exp., Inc.,* 125 F. Supp. 2d 1113, 1116 (N.D. Ill. 2000) ("Because the claim is not frivolous, whether interim payment will cause [the employer] irreparable harm is immaterial.")

The Fund contends Sons cannot fit within this narrow exception. Sons has not tried to show that the Fund's claim is frivolous. But whether or not the court should grant relief because Sons has not made interim withdrawal liability payments is not squarely before the court at this point. The motion before the court is the defendants' request for a wholesale stay of this litigation pending the arbitration.

## II. The court will stay litigation of alter ego and single employer theories but not Sons's liability for interim withdrawal payments.

The court determines that this litigation should not be stayed in its entirety. There is no basis for preventing the Fund from seeking an order from the court requiring Sons to make interim withdrawal liability payments. The court will, however, stay litigation over whether *Construction* should be ordered by the court to make interim withdrawal liability payments the Fund assessed against Sons and Construction's liability for withdrawal liability the arbitrator determines is owed by Sons.

The parties agree that whether Construction can be ordered to make interim withdrawal payments or is responsible for Sons's withdrawal liability depends on a

5

finding that Construction is an alter ego of Sons or a single employer with Sons. The parties also agree that the focus of the arbitration is whether Construction is an alter ego or single employer with Sons. If it is, then Sons's defense to the assessment based on the "construction industry exception" under 29 U.S.C. § 1383(b) is not viable. That exception (as relevant to this case) requires Sons to have ceased performing covered operations for at least five years from the date its obligation to contribute to the Fund terminated. Such a showing is not possible, according to the Fund, because alter ego and single employer theories support a finding that Sons has actually continued in operations through Construction.

Adjudication in this litigation at this time over whether Construction is an alter ego of Sons or single employer with it would require substantial efforts by the parties and the court duplicative of those currently underway in the arbitration. In addition, those legal issues are ones for which Sons has a right to an arbitrator's decision. A decision by the arbitrator likely will be rendered in less than six months, given that the arbitration is scheduled for August 10-11, 2015. It is highly unlikely that the court could adjudicate the issues by a final decision on the merits before the arbitration would conclude. The court's balancing of the relative harm to the parties and its consideration of the interests of judicial economy favor a stay, at this time, of adjudicating the alter ego or single employer issues.[2]

---

[2] The primary harm to the Fund is the risk of Sons's (or Construction's) insolvency. The court is not preventing the Fund from seeking relief against Sons because of Sons's failure to make interim payments. The court's stay of litigating alter ego/single employer issues does not materially increase or decrease the Fund's risk vis-à-vis Construction's potential insolvency because the arbitration is

The Fund may or may not be interested in seeking an order requiring Sons to make interim withdrawal payments without simultaneously litigating whether Construction is jointly liable under an alter ego or single employer theory. The court will not prevent the Fund from moving for an order against Sons requiring interim withdrawal payments. If such a motion is made, the Fund and Sons can put squarely before the court the matters (frivolousness and irreparable harm) pertinent to resolution of such a motion.

## Conclusion

The defendants' motion (Dkt. 33) to stay this lawsuit pending the outcome of the arbitration is GRANTED IN PART AND DENIED IN PART. The court STAYS adjudication of Construction's potential joint liability with Sons for interim withdrawal payments. The Fund may, if desired, seek relief from the court against Sons with respect to interim withdrawal payments.

So ORDERED.

Dated: March 13, 2015

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

providing the Fund with an efficient and speedy forum to obtain a decision on the alter ego/single employer theories. Although the arbitrator's decision may not be binding on Construction, the court will be amenable to a substantially accelerated litigation schedule once the arbitrator issues his decision. The court envisions implementing procedures that can permit the use in the litigation of discovery and testimony from the arbitration proceeding and a tight schedule (perhaps 30-60 days) for parties to show cause why additional evidence and discovery is necessary and to conduct that discovery. The court stresses that it expresses no opinion regarding the preclusive effect (on the Fund or Construction) of the arbitrator's future decision.

Distribution:

All ECF-registered counsel of record by email through the court's ECF system